# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENNETH H. MILLER and NEENA M. MILLER,<br><br>         Plaintiffs,<br><br>    v.<br><br>LOANCARE, LLC and LAKE VIEW LOAN SERVICING, LLC,<br><br>         Defendants. | Case No. 3:19-cv-00274-TMB<br><br>**ORDER ON PLAINTIFFS' MOTION FOR REMAND (DKT. 11), PLAINTIFFS' MOTION TO STAY (DKT. 13), AND DEFENDANTS' MOTION TO DISMISS (DKT. 8)** |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiffs Kenneth H. Miller and Neena M. Miller's Motion for Remand.[1] Defendants LoanCare, LLC and Lakeview Loan Servicing, LLC filed an Opposition and Plaintiffs filed a Reply.[2] The Parties did not request oral argument and the Court finds the matter suitable for disposition without oral argument. Based on the record before the Court and for the reasons discussed below, the Motion for Remand is **GRANTED**. Because the Court grants the Motion for Remand, Plaintiffs' Motion to Stay and Defendants' Motion to Dismiss are both **DENIED**.[3]

---

[1] Dkt. 11 (Motion for Remand).

[2] Dkts. 14 (Opposition); 19 (Reply).

[3] Dkts. 13 (Motion to Stay); 8 (Motion to Dismiss).

## II. BACKGROUND

On December 16, 2016, Plaintiffs obtained a home loan for their residence (the "Property") in the amount of $144,600.[4] Defendants are servicers of the loan.[5] The loan was guaranteed by the United States Department of Veterans Affairs ("VA"), which subjected the loan to certain VA regulations that require servicers to engage in loss mitigation efforts prior to foreclosure.[6]

On or about June 2018, Plaintiffs fell behind on their loan payments.[7] Defendant LoanCare ("LoanCare") sent Plaintiffs a letter dated July 23, 2018 notifying them of the missed payment and requiring payment in the amount of $771.87.[8] Plaintiffs allege that they did not receive the July 23, 2018 letter until October 2018.[9] Plaintiffs further claim that, on October 11, 2018, they submitted a check in the amount of $771.87 to LoanCare but LoanCare did not accept the payment and returned the check.[10] Plaintiffs also assert that they sought loss mitigation assistance but their application was not approved.[11] Ultimately, the Property was sold at a foreclosure sale on May 15, 2019 for $119,351.[12]

---

[4] Dkts. 1 at 6 (Notice of Removal); 1-1 at 2–3 (Complaint).

[5] Dkt. 1-1 at 2.

[6] *Id.* at 3.

[7] *Id.* at 5.

[8] *Id.* at 6.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Dkt. 14-1 at 2 (Trustee's Deed).

On September 13, 2019, Plaintiffs filed a Complaint against Defendants in the Superior Court for the State of Alaska, Third Judicial District at Anchorage.[13] The Complaint seeks declaratory relief, injunctive relief, and damages for the following claims: (1) wrongful foreclosure; (2) violation of Alaska's Unfair Trade Practices and Consumer Protection Act; (3) breach of contract; (4) negligent misrepresentation; (5) intentional misrepresentation; (6) ratification; and (7) quiet title.[14] On October 17, 2019, Defendants removed the state action to this Court based on diversity jurisdiction.[15] Defendants then moved to dismiss the Complaint, arguing that no relief can be granted under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").[16]

Rather than directly oppose Defendants' Motion to Dismiss, Plaintiffs filed the Motion for Remand and Memorandum in Support of Plaintiffs' Motion for Remand ("Memorandum").[17] Plaintiffs also filed a motion to stay briefing on Defendants' Motion to Dismiss ("Motion to Stay") pending the Court's decision on the Motion for Remand.[18] In the Memorandum, Plaintiffs calculate that their equity in the Property is *de minimis* and their claims, if successful, would result in damages less than $75,000.[19] Plaintiff acknowledge that if they were to receive the house free and clear of a mortgage, then the proper measure of the amount in controversy would be the value

---

[13] Dkt. 1-1.

[14] *Id.* at 7–10.

[15] Dkt. 1.

[16] Dkt. 8 (Motion to Dismiss).

[17] Dkts. 11; 12 (Memorandum).

[18] Dkt. 13 (Motion to Stay).

[19] Dkt. 12 at 4.

of the property or the amount of the loan.[20] However, Plaintiffs clarify that they "want to return to the status quo ante where they take title to their home **subject** to defendants' mortgage."[21] Therefore, Plaintiffs argue that the amount in controversy in this case is less than $75,000 and the case should be remanded to the Alaska Superior Court because this Court lacks jurisdiction.[22]

In their Opposition to the Motion for Remand, Defendants argue that the Court must consider the pecuniary result of a judgment to either party in determining the amount in controversy.[23] Defendants assert that here, because the Property sold for $119,351, the foreclosure that Plaintiffs seek to void "has a value to Defendants of $119,351.00."[24] Therefore, from Defendant's viewpoint, the amount in controversy exceeds $75,000 and therefore establishes diversity jurisdiction.[25] Accordingly, Defendants oppose remanding to Alaska Superior Court.[26]

Plaintiffs' Reply largely repeats their arguments in the Motion for Remand.[27] Plaintiffs emphasize that they are not seeking to permanently void the foreclosure sale.[28] Furthermore, Plaintiffs distinguish the caselaw Defendants rely on in favor of precedents from this District.[29]

---

[20] *Id.* at 5.

[21] *Id.* (emphasis in original).

[22] *Id.* at 3–6.

[23] Dkt. 14 at 3.

[24] *Id.* at 4.

[25] *Id.* at 5.

[26] *Id.* at 5–6.

[27] Dkt. 19.

[28] *Id.* at 4.

[29] *Id.* at 3–5.

Plaintiffs argue that where they seek to temporarily delay the foreclosure, the amount in controversy does not equal the value of the Property or the loan.[30] As a result, Plaintiffs assert the amount in controversy does not meet the jurisdictional requirement and the case should be remanded.[31]

### III. LEGAL STANDARD

Under 28 U.S.C. §1441, a defendant may remove to federal court any civil action that could have originally been brought in federal court. A plaintiff may then seek to remand the case to the state court if, *inter alia*, the federal district court lacks subject matter jurisdiction.[32] Court must "strictly construe the removal statute against removal jurisdiction," and "the defendant always has the burden of establishing that removal is proper."[33] "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."[34]

### IV. ANALYSIS

Defendants removed this action on the basis of diversity jurisdiction.[35] "For a federal court to exercise diversity jurisdiction under § 1332(a), the amount in controversy must exceed $75,000,

---

[30] *Id.* at 5.

[31] *Id.* at 2.

[32] 28 U.S.C. § 1447(c). *See also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("A motion to remand is the proper procedure for challenging removal.").

[33] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988)).

[34] *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

[35] Dkt. 1 at 1; 28 U.S.C. §§ 1332 and 1441(b).

and the parties must be citizens of different states."[36] Here, the Parties do not dispute their diversity of citizenship.[37] However, the Parties do dispute whether the amount in controversy exceeds $75,000.[38]

In cases—such as the case here—"[w]here it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."[39] The amount in controversy may be determined from "either viewpoint," meaning the threshold amount may be established by "the pecuniary result to either party which the judgment would directly produce."[40] As a general rule, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."[41]

In *Corral v. Select Portfolio Servicing, Inc.*, the Ninth Circuit recognized that, when a case litigates a temporary injunction of the foreclosure process, the temporary injunction serves as the "object of the litigation," not the amount of indebtedness.[42] The *Corral* Court contemplated the costs and benefits under the "either viewpoint" rule and found that the amount in controversy

---

[36] *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017) (quoting *Rainero v. Archon Corp.*, 844 F.3d 832, 839 (9th Cir. 2016).

[37] Dkt. 1 at 3–5.

[38] *See* Dkts. 12; 14.

[39] *Corral*, 878 F.3d at 774 (quoting *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.2003)).

[40] *Id.* at 775 (quoting *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)).

[41] *Id.* (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)).

[42] *Id.*

related to a temporary delay in foreclosure would be minimal.[43] The cost would be based on the amount of time it takes the defendant to review a loan modification application while the benefit to the plaintiff would be derived from temporarily retaining possession of the property.[44] The *Corral* Court also distinguished its holding from cases that litigate permanent injunctions of foreclosure.[45] In cases that litigate temporary injunctions, even if the plaintiff succeeds, "they would not be able to retain possession and ownership of their Property without paying off their debt."[46] Therefore, the Ninth Circuit expressly rejected the premise that the amount in controversy over such cases equals the value of the property or the amount of indebtedness.[47]

The courts in this District have interpreted *Corral* to apply in situations nearly identical to the case at hand, where the property has been sold at a foreclosure sale.[48] In *Dalby v. Ditech Financial LLC*, the plaintiff alleged that he lost title to his home when the defendant transferred the property in an unauthorized foreclosure sale.[49] The plaintiff commenced the action in state court and the defendants removed the action to federal district court based on diversity jurisdiction. The *Dalby* Court recognized that the plaintiff was "not asking that defendants be permanently

---

[43] *Id.*

[44] *Id.* at 775–76.

[45] *Id.* at 776. ("When a plaintiff seeks to quiet title to a property or permanently enjoin foreclosure, the object of the litigation is the ownership of the property. Therefore, the value of the property or the amount of indebtedness on the property is a proper measure of the amount in controversy.").

[46] *Id.*

[47] *Id.* (acknowledging that parties seeking to establish diversity jurisdiction "may still demonstrate that the amount in controversy requirement is satisfied using other measures.").

[48] *See Dalby v. Ditech Financial LLC*, 285 F. Supp. 3d 1092 (D. Alaska 2018); *Naufahu v. Robinson Tait, P.S.*, Case No. 3:17-cv-00212-TMB, 2018 WL 1870398 (D. Alaska Apr. 16, 2018).

[49] *Dalby*, 285 F. Supp. 3d at 1093.

7

enjoined from foreclosing on his home" and therefore applied the *Corral* holding to find that the defendants failed to show that the amount in controversy had been met.[50] There, the *Dalby* Court also remanded the case to state court.[51]

Similarly, *Naufahu v. Robinson Tait, P.S.*, the plaintiff received notice that he had defaulted on his home loan and the defendants intended to sell the property at a non-judicial foreclosure sale.[52] The plaintiff then filed an action in state court.[53] The defendants indeed sold the property and subsequently removed the state action to this Court on the basis of diversity jurisdiction.[54] The defendants argued that value of the property constituted the amount in controversy but the Court disagreed, finding that the plaintiff was not asking to permanently enjoin foreclosure on the property and so the property's value was not the proper measure of costs.[55] The Court therefore granted the plaintiff's motion to remand.[56]

The *Corral* holding applies in this case, as well. The present Complaint is silent on the amount in controversy, but Plaintiffs contend that the amount is less than $75,000.[57] Defendants argue that the amount in controversy equals the sale price of the Property at foreclosure.[58] If

---

[50] *Id.* at 1096–97.

[51] *Id.* at 1097.

[52] *Naufahu*, 2018 WL 1870398, at *1.

[53] *Id.*

[54] *Id.* at *1–2.

[55] *Id.* at *3–4.

[56] *Id.* at *5.

[57] *See* Dkts. 1-1; 12 at 3.

[58] Dkt. 14 at 4.

Plaintiffs were seeking to quiet title or permanently enjoin foreclosure, then according to *Corral*, the value of the property would be the proper measure of the amount in controversy.[59] However, the Plaintiffs expressly and repeatedly assert that they are not seeking the house free and clear of a mortgage or to permanently enjoin foreclosure.[60] Rather, Plaintiffs seek title to the Property subject to the mortgage.[61] "This circumstance is unlike cases in which plaintiffs seek to enjoin foreclosure indefinitely as part of an effort to quiet title to property or rescind their loan agreements."[62]

Therefore, under either viewpoint, the amount in controversy requirement has not been met in this case. Given Plaintiffs' *de minimis* equity in the Property and requested relief, their claimed damages are far less than $75,000. If Plaintiffs succeed, they would still be obligated to repay their debts.[63] As such, the pecuniary harm that would be suffered by Defendants does not equal either the full amount of indebtedness or full value of the property sold.[64] Furthermore, Defendants have not argued that any measure other than the property value satisfies the amount in controversy requirement. Consequently, Defendants have not established that the amount in controversy satisfies the threshold for diversity jurisdiction and so removal was not proper.

---

[59] *Corral*, 878 F.3d at 776.

[60] Dkts. 12 at 5; 19 at 2–4.

[61] Dkt. 12 at 2, 5.

[62] *Corral*, 878 F.3d at 776.

[63] *See id.*

[64] *See id.* at 775–76.

## V. CONCLUSION

Based on the foregoing reasons, Plaintiffs' Motion for Remand at docket 11 is **GRANTED**. As such, Plaintiffs' Motion to Stay at docket 13 is **DENIED AS MOOT** and Defendants' Motion to Dismiss at docket 8 is **DENIED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 13th day of January, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE